UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATIE CHUNG,                          :
                                      :
        Plaintiff,                    :
                                      :
    v.                                : Civil Action No. 04-0366 (JR)
                                      :
WASHINGTON METROPOLITAN AREA          :
TRANSIT AUTHORITY,                    :
                                      :
        Defendant.                    :

**MEMORANDUM**

This memorandum explains the reasons for the accompanying order, granting the motion of defendant Washington Metropolitan Area Transit Authority (WMATA) for summary judgment on plaintiff Katie Chung's charges of race- and gender-based employment discrimination.

**BACKGROUND**

Plaintiff began working at WMATA in 1984 as a human resources generalist and went on to hold many positions with WMATA. Compl. ¶ 4. She was promoted to assistant superintendent of parking in 2000, id. at 4, a promotion for which she was interviewed by K.P. Heinemeyer, one of the interviewers in the instant case. Pl.'s Statement of Material Facts ¶ 20. She held that position at the time of the discrimination that she claims here. Compl. ¶ 4. She was consistently rated "competent,"

"meeting expectations," or "exceeding expectations" on her performance evaluations.  Id.

In May 2003, the position of parking manager became available, Compl. ¶ 8, and was posted on May 29, 2003 with a closing date of June 30, 2003.  Ex. No. 13a.  The closing date was changed several times after the posting; eventually it had a closing date of "open until filled."  Ex. Nos. 13b-d.  The job posting contained no requirement that applicants have prior parking experience.  Pl.'s Opp. To Def.'s Mot. for Summ. J. at 4-5.  Plaintiff was on sick leave at the time of the initial job posting but learned of it, and, meeting the minimum requirements, applied for the position on or before June 12, 2003.  Compl. ¶ 9.

Mr. Heinemeyer and Denton Kent selected seven candidates for interviews, including plaintiff, out of over 100 applicants.  Def.'s Mot. for Summ. J. at 7-8.  The interview consisted of nine questions, which were assigned weighted scores.  Id.  Raymond Stoner, a white male applicant, received the highest score of 101 and was subsequently hired.  Id. at 8.  Plaintiff received a score of 81, placing her fifth of the seven interviewees.  Id.

## ANALYSIS

When confronted with a motion for summary judgment, plaintiff's discrimination claims must be examined under the

- 2 -

familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Plaintiff must first establish a prima facie case of discrimination.  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).  If a prima facie case is established, defendant must show that there was a legitimate, non-discriminatory reason for the challenged action.  Id.  If defendant meets this burden, plaintiff must then show that defendant's proffered reason is but a pretext for discrimination. Id.

Defendants concede that plaintiff succeeded in establishing a prima facie case of discrimination.  The burden now shifts to the employer to articulate a non-discriminatory reason for its decision to select one applicant rather than the plaintiff for a position.  Barnette v. Chertoff, 453 F.3d 513, 515-16 (D.C. Cir. 2006) (internal citations omitted).  The employer's burden, however, is one of production, meaning it need not persuade the court that it was actually motivated by the proffered reasons.  Id. at 516.

The non-discriminatory reason that WMATA has produced is that the two interviewers, Mr. Heinemeyer and Mr. Kent, concluded, after interviewing seven qualified candidates, that Mr. Stoner's qualifications "best suited the needs of WMATA." Def.'s Mot. for Summ. J. at 8, citing to affidavits of Heinemeyer and Kent; Statement of Material Facts [12] at 4 ¶ 30.  For

instance, while plaintiff held a master's degree in Education and took accounting courses, Mr. Stoner held a business administration degree and viewed parking from a business perspective, which appealed to the interviewers. Id. at 10.  In his interview, Mr. Stoner also discussed other areas of expertise that appealed to the interviewers, including construction, procurement, management and revenue collection. Id.  Further, WMATA asserts that its parking program was "under scrutiny" at the time of the interview due to alleged thefts by parking fee collectors. Id. at 12.  This led the interviewers to believe that hiring an external candidate rather than an internal one would be "more advantageous to WMATA," a conclusion bolstered by Mr. Stoner's score of 30 in explaining the best way to prevent or reduce theft as compared to plaintiff's score of 23. Id. at 13. Mr. Stoner also had responsibility with his previous employer for running what the interviewers considered was a "transit business," although plaintiff's experience with WMATA over the prior 19 years merited her a superior score for "experience with a transit agency" (plaintiff received a score of 10 to Mr. Stoner's score of 8).

      WMATA's production of a legitimate non-discriminatory reason for hiring Mr. Stoner shifts to plaintiff the burden of showing that WMATA's reasons are a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 802-03.  To show pretext, a

plaintiff may use a combination of: "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)...." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998). "Comparing qualifications is insufficient to establish discriminatory intent unless the plaintiff is 'significantly better qualified' than the person who obtained the position." Hussain v. Nicholson, 435 F.3d 359, 365 (D.C. Cir. 2006). A plaintiff is not required to establish this disparity in order to survive a motion for summary judgment, however. Rather, she may seek to expose other flaws in the employer's explanation, including, inter alia, demonstrating that the employer has misstated her qualifications. Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006) (quoting Aka, 156 F.3d at 1295). A court may not second-guess an employer's personnel decision absent a demonstrably discriminatory motive, and a court must respect the employer's unfettered discretion to choose among qualified candidates. Fischbach v. District of Columbia, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

      Plaintiff first attempts to demonstrate pretext with the affidavits of fellow employees who (apparently) thought she

should have been selected for the parking manager position. Heidi J. Ackerman, a lawyer who has apparently forgotten the hearsay rule, states in her affidavit [14-3] that "from conversations with Ms. Katie Chung" she has "personal knowledge" that Ms. Chung attempted to bring "revenue leakage" problems to the attention of Messrs. Kent and Heinemeyer and "believes" Ms. Chung was mistreated in weekly meetings; and that she "believes" that Messrs. Kent and Heinemeyer did not take Ms. Chung "seriously" because of her race and gender; and that she has "witnessed Messrs. Kent and Heinemeyer having difficulty working with female employees." Marlene McGuirl, another lawyer and a professor of environmental law, delivers a broadside accusation of discrimination against WMATA's office of general counsel (not, presumably, where the parking manager would work), asserting her "belief" that the example of CEO Richard White "permeated the entire WMATA." [14-4] Jesse R. Chester, an African-American male, contributes his belief that he himself was discriminated against at WMATA (his case was "dismissed on a technicality") and swears that Mr. Kent has a "reputation for being extremely temperamental and disrespectful." [14-5] And Daphne Cox-Lassiter [14-6] does not think that Mr. Heinemeyer ever intended to give serious consideration to a female candidate for the parking job, because he used the term "new guy" to refer to the person who would be hired for the job. [14-6] None of

those statements would be admissible.  They are hearsay, or statements of personal belief, or immaterial.  Admissible or not, none of them is probative of the proposition that WMATA's nondiscriminatory reason was untrue, or that it was a pretext for discrimination.

Plaintiff goes on to assert that aspects of the job posting process demonstrated pretext: that the specification of a minimum number of years experience in parking operations was omitted from the vacancy announcement to lower the bar so that other candidates could be hired instead of defendant; that the posting of the vacancy announcement while plaintiff was on sick leave is evidence of WMATA's desire to exclude her from applying for the position; and that the announcement's closing date was changed from June 12, 2003, to June 30, 2003, to "open until filled," in order to give WMATA more time to hire someone besides her.  The first of these claims argues by implication that Mr. Stoner was less qualified than plaintiff, when it is undisputed that Mr. Stoner did have prior experience in parking management that would have met the criterion that plaintiff claims was nefariously omitted.  As for the timing of the vacancy announcement and the changes in the closing date, plaintiff offers no factual support for her own speculation that they were improperly motivated.

Plaintiff next argues that the interview process was flawed, and that WMATA failed to follow its own hiring guidelines. Plaintiff offers no evidence, however, to contradict WMATA's submission that its guidelines were advisory, and that the interviewing and hiring process WMATA in fact used had become WMATA's norm. See Fishbach, 86 F.3d at 1183 (where departure from regulations becomes the norm, there is no basis for concluding that the procedure followed was implausible).

Finally, plaintiff argues that WMATA overstates Mr. Stoner's qualifications and under-rates hers. It appears to me that Mr. Stoner had clearly superior qualifications. Of course, my view is not the standard for decision. I do find, however, that, on this record, no reasonable juror could conclude that Mr. Stoner's qualifications were so significantly deficient in comparison to plaintiff's qualifications to permit second-guessing of WMATA's hiring decision. See Barnette, 453 F.3d at 517-19.

* * * * *

An appropriate order accompanies this memorandum.


                              JAMES ROBERTSON
                          United States District Judge